

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| CLAYTON ANTWAIN SHANKLIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | 6:20-cv-2020-LSC |
| ) | |
| TERRY RAYBON, Warden of ) Holman Correctional Facility, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OF OPINION AND ORDER
## DENYING MOTION TO STAY

**I.    Introduction**

Clayton Antwain Shanklin ("Shanklin") seeks federal habeas relief from his 2011 capital murder conviction and death sentence in Walker County, Alabama, under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended § 2254, governs Shanklin's habeas action.

Presently before this Court is Shanklin's "Motion to Stay, and Hold in Abeyance, the Instant Proceedings Pending Exhaustion of Claim III in State Court." (Doc. 26.) Shanklin contends that the Court should stay this federal habeas action while he returns to state court to pursue a more detailed version of a penalty-phase ineffective assistance of counsel claim than what he presented previously in state

court. Respondent Terry Raybon opposes Shanklin's motion. (Doc. 27.) Respondent

Raybon counters that Shanklin is unable to show that a stay to exhaust this claim on

the merits is feasible under Rule 32 of the Alabama Rules of Criminal Procedure or

appropriate under *Rhines v. Weber*, 544 U.S. 269 (2005), which establishes stay

factors that apply in AEDPA cases. Shanklin has replied in support of his motion.

(Doc. 28.) Consistent with the discussion below, the motion to stay is due to be

denied.

## II.     Background and Procedural History

A jury convicted Shanklin of capital murder in the shooting of Michael

Crumpton and attempted murder of Ashley Crumpton during a "home invasion"

with an intent "to steal . . . marijuana and . . . money." (Doc. 30-1 at 26, 49, 66-67.)

In the penalty phase, the jury voted unanimously that Shanklin receive a life sentence.

(*Id.* at 50.) The trial court overrode the jury's recommendation based on the existence

of five aggravating circumstances and sentenced Shanklin to death. (*Id.* at 82-91.)

This override option was permitted under Alabama's former capital punishment

structure. *See* Ala. Code § 13A-5-47.1.

Shanklin appealed, but the Alabama Court of Criminal Appeals ("ACCA")

affirmed the judgment. *See Shanklin v. State*, 187 So. 3d 734 (Ala. Crim. App. 2014).

The ACCA declined his rehearing request, and the Alabama Supreme Court denied his petition for a writ of certiorari, as did the United States Supreme Court.

Shanklin petitioned the Alabama courts for collateral relief under Rule 32, asserting, among other things, violations of his Sixth Amendment right to effective counsel under the framework set out in *Strickland v. Washington*, 466 U.S. 668 (1984). He was aided by the Equal Justice Initiative in drafting his Rule 32 petition, and he was later represented by pro bono counsel from Alabama and Colorado. Relative to the instant motion to stay, Shanklin included in his amended Rule 32 petition a 19-page claim that his trial counsel was ineffective at the penalty phase by failing to investigate and present mitigation evidence adequately, including failing to interview witnesses adequately, failing to prepare witnesses to testify effectively, overlooking documented examples of trauma in his life, omitting evidence of his childhood abandonment and family history of mental illness, and failing to retain expert witnesses. Shanklin included information on his background, family history, and mental state that he claimed his trial counsel could have uncovered that would have caused the trial judge to uphold the jury's sentencing verdict rather than rule that he should receive the death penalty.

The Rule 32 court denied Shanklin collateral relief. The court ruled that Shanklin had not pled with sufficient particularity all of his penalty-phase ineffective assistance of counsel claims under Rules 32.6(b) and 32.3. For example, the court noted that Shanklin's allegations about uncalled witnesses, undeveloped information that he and others could have provided, and omitted documents were inadequate because he failed to describe the anticipated testimony or the alleged mitigating information from those sources. The court also noted that mitigating information about Shanklin's troubled life would have been at odds with his trial counsel's strategy to paint him in a positive light as part of a loving family and provider to his children. Additionally, the court found that Shanklin failed to satisfy his burden to plead prejudice. The court observed that, given the unanimous recommendation of a life sentence, trial counsel had "convinced the jury to show leniency." Although the trial judge overrode the jury's advisory verdict and sentenced Shanklin to death based upon the existence of five aggravating circumstances, the Rule 32 court (which was the same as the trial court) found that Shanklin had not established that the mitigating information would have outweighed the heavy aggravation in the case.

4

The ACCA affirmed the Rule 32 court's judgment and declined Shanklin's rehearing request, and the Alabama Supreme Court denied his petition for a writ of certiorari.

Shanklin then petitioned this Court for habeas relief. In Claim III, he presents a 50-page penalty-phase ineffective assistance of trial counsel claim, most of which consists of a narrative "mitigation story," which Shanklin states was "developed through the assistance of a mitigation investigator with a background in mental health." He further states that this investigator "spent hundreds of hours researching the backgrounds of [Shanklin] and his family; gathering and reviewing relevant records; conducting witness interviews of family, friends, educators, and others in the community; assisting the experts; and developing a relationship of trust with" him to prepare the mitigation story. Broadly speaking, the mitigation story speaks of Shanklin's parents, their marriage, and their separations; alleged violence and abuse in the home; unstable family members; Shanklin's educational career; Shanklin's personality; Shanklin's brother and sister; the town of Parrish, Alabama; "Mad Dog" Madison, a local drug dealer whom Shanklin worked for; Shanklin's two marriages; the deaths of Shanklin's great-grandmother and his first wife; incidents of mental illness, addiction, and incarceration in Shanklin's extended family; and Shanklin's

5

mental health and substance abuse. Shanklin also attaches declarations from his trial counsel in support his claim that their performance was deficient. Claim III is the basis for the instant motion to stay.

## III.   Discussion

Respondent Raybon agrees that the majority of the facts in Claim III were not exhausted in Shanklin's Rule 32 proceedings. However, because Shanklin has not shown that returning to state court to exhaust the newly-presented parts of Claim III is feasible under Alabama law, a stay of this habeas action is inappropriate under *Rhines*.

As an initial matter, although Shanklin's motion focuses on the Supreme Court's decision in *Rhines*, he nowhere explains how he would feasibly obtain relief in state court on Claim III. Post-conviction proceedings in Alabama are governed by Rule 32 of the Alabama Rules of Criminal Procedure. Shanklin's Rule 32 proceedings commenced with the filing of his first petition on August 25, 2016, and concluded on May 22, 2020, when the Alabama Supreme Court denied certiorari. Rule 32.2(b) places strict limitations on successive Rule 32 petitions, as follows:

> (b) **Successive Petitions**. If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or

guilty-plea proceeding shall be treated as successive petitions under this rule. The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner. A successive petition on different grounds shall be denied unless (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

Ala. R. Crim. P. 32.2(b). Thus, the state courts will deny a successive petition on "the same or similar grounds" as claims raised in the first petition, and the state courts will deny a successive petition on *different* grounds unless the claims are jurisdictional or a petitioner can show both (1) good cause for why the claims were not and could not have been known in time for the first petition, and (2) that failure to consider the claims would "result in a miscarriage of justice." Shanklin cannot make any of these showings as to Claim III.

First, some of the facts that he includes in the "mitigation story" in Claim III were presented in his Rule 32 proceedings. For example, he previously alleged in the state courts that: 1) mentally ill and sometimes violent family members, including Shanklin's maternal grandmother, Johnnie Ella Mickens, and her brother, Lovell Mickens, lived in the Shanklin home during his childhood; 2) Lovell beat other family

members; 3) Shanklin's neighborhood in Parrish had heavy drug use; 4) "Mad Dog",

a prominent drug dealer in Shanklin's neighborhood, was a mentor and father figure

to Shanklin, he taught Shanklin to use and sell drugs, and Shanklin worked for him

selling drugs as a teenager; 5) Shanklin began using drugs as a preteen, including

marijuana; 6) as he grew older, he used methamphetamine, cocaine, and ecstasy; 7)

Shanklin married a woman named Kelly around 2004, when he was about eighteen or

nineteen and she was about a decade his senior; 8) shortly thereafter, she overdosed

and was taken to the hospital, and Shanklin had to make the decision to remove her

from life support; 9) the pretrial forensic evaluation report by Dr. Doug McKeown

contained readily available mitigation evidence that Shanklin had a history of drug

abuse, hearing voices, and a suicide attempt, and he functioned in the low-average

range of intelligence, but trial counsel did not explore these topics with Shanklin, his

family, or his friends; 10) trial counsel's penalty-phase opening statement was only

two pages long, as he claimed that Shanklin could be rehabilitated and make a

contribution to society, but he did not explain how; 11) trial counsel's closing

argument was only three paragraphs long, conceded the "heinous, atrocious, and

cruel" aggravator, and was too general about the mitigation evidence; and 12) at

judicial sentencing, Shanklin's counsel failed to do any additional investigation of

mitigating evidence, only calling his father and mother to testify, and they elicited nothing more than that his parents loved him and wanted him to live. Because this information was already presented, Rule 32.2(b) would bar the state courts from considering any of the foregoing in a successive petition.

Second, Claim III is not "jurisdictional" as contemplated by Rule 32. Claim III does not allege that the trial court lacked "jurisdiction to render judgment or impose sentence." Ala. R. Crim. P. 32.1(b). Thus, the exception to the Rule 32.2(b) bar on successive petitions, which allows jurisdictional claims to be raised at any time in Rule 32 proceedings, does not apply.

Third, regarding the new facts in Claim III, Shanklin cannot show both (1) good cause for why these facts were not known in time for his original Rule 32 petition, and (2) that failure to consider the claim would "result in a miscarriage of justice." *See* Ala. R. Crim. P. 32.2(b).

Shanklin asserts that he meets Rule 32.2(b)'s "good cause" standard because his pro bono post-conviction counsel, Gregory Gardner, a solo practitioner from Colorado, "abandoned" him during Rule 32 proceedings, and he should not be held responsible for his attorney's failings, especially since he suffers from mental illness, memory problems, and limited education. However, "the United States Supreme

Court has made it clear that neither the Eighth Amendment nor the Due Process Clause of the United States Constitution requires states to appoint counsel for inmates, including death-row inmates, who seek post-conviction relief in state courts." *Ex parte Jenkins*, 972 So. 2d 159, 164 (Ala. 2005) (citing *Murray v. Giarratano*, 492 U.S. 1 (1989)). Additionally, although *Martinez v. Ryan* carves out an exception for procedurally defaulted claims of ineffective assistance of trial counsel if postconviction counsel's ineffectiveness causes the default, *see* 32 566 U.S. 1 (2012), *Martinez* is applicable only in federal habeas—it does not establish grounds for a successive Rule 32 petition. In any event, the fact remains that before Mr. Gardner ever appeared on his behalf, Shanklin submitted a 19-page penalty-phase ineffective assistance of counsel claim, with the aid of the Equal Justice Initiative. Although Claim III is now a more detailed narrative, Shanklin does not explain why the basis for this claim was not known to him during his Rule 32 proceedings, especially considering that the information pertains to Shanklin himself. Shanklin certainly does not claim that he told all of this personal information to Mr. Gardner who then declined to include it in an amended petition. Moreover, while Shanklin states that he developed this new "mitigation story" through the assistance of a mitigation investigator with a background in mental health, he does not identify this individual.

And while he also states that the anonymous investigator "spent hundreds of hours" researching mitigation for Claim III, he does not detail what records were reviewed, who the individuals were that he spoke with, the substance of these individuals' proposed testimony, whether they would have been willing and available to testify during the penalty phase of his trial, and an explanation of how the testimony would have changed the outcome.

Moreover, even if Shanklin could show good cause for why the Claim III allegations were not known at the time of his Rule 32 proceedings, he would then need to show that the state courts' failure to consider the claim would result in a miscarriage of justice. Shanklin has not made any such showing. As noted, Shanklin did present a penalty-phase ineffective assistance of counsel claim during Rule 32, but the court ruled that it was insufficiently pleaded under Rule 32.3 and 32.6(b). For example, the Rule 32 court explained that although Shanklin claimed that counsel should have met with certain named witnesses, or met with them for longer, he "did not plead the substance of any of these witnesses' testimony or plead facts showing how it would have overcome the strong aggravation in his case." The court further noted that Shanklin failed to identify other potential witnesses by name and that although he alleged that his counsel should have acquired various types of records, he

"failed to specify which records, from which sources, and for what purpose," or otherwise failed to plead facts showing what information the records would have offered and how he was prejudiced by their absence. The court also noted that Shanklin claimed that he had grown up in an abusive family and suffered a traumatic childhood, but he "failed to plead facts showing who would have testified to this evidence and whether these witnesses would have been available and willing to testify." Finally, the court explained that although Shanklin argued that counsel should have hired experts, including a mitigation specialist, he failed to identify any experts by name.

Shanklin's "mitigation story" in Claim III suffers from the same lack of specificity. He does not name the mitigation expert or identify any witnesses who would have testified, summarize specific witnesses' testimonies, show that such witnesses would have been available to testify at trial, or show that the missing testimony would have resulted in a different outcome. In sum, the new Claim III would be dismissed as insufficiently pleaded under Rule 32.3 and 32.6(b), so the state courts' failure to consider it could not be deemed a miscarriage of justice.

Shanklin's inability to make the required showing under Rule 32.2(b) to bring a successive Rule 32 petition dooms his ability to receive a stay under *Rhines*. The

Supreme Court held in *Rhines* that a petitioner who files a habeas petition containing both exhausted and unexhausted claims may be entitled to a stay in district court where (1) he shows good cause for his failure to exhaust, (2) the unexhausted claims are not "plainly meritless," and (3) he is not engaging in "abusive litigation tactics or intentional delay. 544 U.S. at 277-78. Shanklin cannot meet this burden.

First, Shanklin has not shown good cause for his failure to exhaust for essentially the same reasons that he cannot meet Rule 32.2(b)'s good cause requirement. Although he complains that his pro bono post-conviction counsel from Colorado abandoned him during Rule 32 proceedings, he had already submitted a substantial penalty-phase ineffective assistance of counsel claim with the help of the Equal Justice Initiative, which touched upon most of the same themes that he now presents in Claim III. Second, Shanklin's unexhausted claims are not potentially meritorious because, as already stated, Shanklin has offered no procedural pathway that would entitle him to a substantive review of Claim III in the Alabama courts under Rule 32. Having failed to meet elements one and two of a *Rhines* stay, the court need not consider whether the stay request is designed to delay these proceedings. In sum, the *Rhines* Court simply did not open the door to stays to pursue a claim that is

plainly unreviewable under the procedural rules of the state's post-conviction structure.

Nonetheless, Shanklin argues that the Alabama courts should have an opportunity to consider his more detailed penalty-phase ineffective assistance of counsel claim because of two legal developments. One is the Supreme Court's decision in *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022). *Ramirez* did not concern a *Rhines* stay and does not bear on the issue here. In *Ramirez*, the Court considered the question of "whether the equitable rule announced in *Martinez* permits a federal court to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record." *Id.* at 1728. The Supreme Court held that it does not: "under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Id.* at 1734. Shanklin relies on the Supreme Court's remarks that "exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *id.* at 1732 (cleaned up), and "when a claim is unexhausted, the prisoner might have an opportunity to return to state court to adjudicate the claim," *id.* But the Supreme Court's general observations that

14

exhaustion requires an initial review in state court and that a petitioner "might" have

the option of returning to state court and exhausting a *Strickland* claim on the merits

fall far short of establishing that Shanklin has access to a second substantive review in

the Alabama courts under these circumstances.

The other development is Alabama's new requirement to appoint counsel "in

all capital post-conviction proceedings" under Ala. Code § 13A-5-53.1(b). According

to Shanklin, the "Alabama courts should determine" the impact of "the recent sea

change in federal habeas law, following [the] enactment of a statute governing state

post-conviction since [his] post-conviction proceedings . . . on existing preclusion

rules." (Doc. 28 at 2.) As legal support for this contention, Shanklin references the

Alabama Supreme Court's "function . . . to 'say what the law is,' for the benefit of

lower courts, attorneys, and the public" and its "original jurisdiction . . . to issue such

remedial writs or orders as may be necessary to give it general supervision and control

of courts of inferior jurisdiction." (*Id.* at 2-3) (some internal quotation marks

omitted). But missing from Shanklin's argument is any precedent that links these

Alabama Supreme Court powers to a petitioner's ability to present a second

*Strickland* mitigation claim to the Alabama courts for adjudication without regard to

or independent from Rule 32's requirements.

15

In sum, Shanklin's failure to address or overcome the significant obstacles to obtaining merits-based review under Alabama law means that his unexhausted *Strickland* claim is "plainly meritless," and a *Rhines* stay is inappropriate.

## IV.  Conclusion

Consistent with the foregoing, the motion to stay (doc. 26) is hereby **DENIED**.

**DONE** and **ORDERED** on March 3, 2023.

_____
L. Scott Coogler
United States District Judge

160704

16